# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KYLE A. PARKER, # R-42752,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> vs. ) <br> ) <br> **JOHN BALDWIN,** ) <br> **ANITA BAZILE-SAWYER,** ) <br> **and JULIE THOMPSON,** ) <br> ) <br> **Defendants.** ) | Case No. 18-cv-1122-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Graham Correctional Center ("Graham"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose while he was confined at Southwestern Illinois Correctional Center ("Southwestern"). Plaintiff claims that Defendants infringed on his right to practice his religion and punished him for engaging in the practice of his faith. The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers

1

to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

**The Complaint**

Plaintiff sues Baldwin, who is Acting Director of the IDOC; Bazile-Sawyer, the Southwestern Warden; and Thompson, an Internal Affairs officer at Southwestern.

On October 16, 2017, Thompson called Plaintiff in to interview him about his religious practices. Plaintiff is an adherent of the Asatru faith. (Doc. 1, p. 5). Thompson implied that Plaintiff was a member of a white supremacist organization because he practiced Asatru.

2

Plaintiff vehemently disputed this suggestion, offering to show Thompson documentation that an Asatru practitioner could not hold racist views. (Doc. 1, p. 5). Thompson declined to review Plaintiff's information. Plaintiff acknowledged that he was a "spiritual leader" with other Asatru practitioners, but did not hold any authority over them. (Doc. 1, p. 6). Plaintiff also discussed his history of teaching an Asatru service while in the Indiana Department of Corrections, as well as his work with Southwestern chaplains in an attempt to get Asatru services started there with an outside volunteer to teach services. (Doc. 1, pp. 6-7). Plaintiff told Thompson that he was not holding religious services for "all of the Asatru" in the prison dayroom, because some members lived in different housing units and could not join him in his unit's dayroom.

Thompson asked Plaintiff to step out of her office while she consulted with Bazile-Sawyer "to determine if [Plaintiff] would be put into segregation for practicing and holding religious services on [his] unit." (Doc. 1, p. 7). About 20 minutes later, Plaintiff was placed in segregation with no explanation. *Id.* The documents he provides show that he was placed there under investigative status. (Doc. 1-1, pp. 1-2).

Nine days later, Thompson filed charges against Plaintiff for dangerous disturbance, security threat group or unauthorized organization activity, and dangerous communications, because Plaintiff had provided instruction in the Asatru faith, held services, and taught the runes. (Doc. 1, pp. 7-8; Doc. 1-1, pp. 4-6; 8-11). According to Plaintiff's attached grievances and the responses, he was found guilty of these offenses and punished with 30 days in segregation, 60 days in "C" grade status, six months of contact visit restrictions, and a disciplinary transfer. (Doc. 1-1, p. 11). Plaintiff contested this action in his grievance, noting that the Asatru and Wicca faiths are approved religious groups in the IDOC. (Doc. 1-1, pp. 10-11). He acknowledges that he held an Asatru study group in his dayroom, but states that the information on the number

of inmates attending and the identities of those inmates was incorrect. (Doc. 1-1, pp. 10-11).

Plaintiff asserts that Thompson's disciplinary charges and his punishment violated his First and Eighth Amendment rights, as well as his rights under the Religious Land Use and Incarcerated Persons Act ("RLUIPA"), because he was disciplined for practicing his religion. (Doc. 1, p. 8). In addition to the segregation time and other punishment he received, Plaintiff asserts that the "dangerous disturbance" conviction will make him ineligible to receive a six month sentence credit that he would otherwise be eligible for. (Doc. 1, pp. 8-10).[1]

During Plaintiff's time in segregation at Southwestern, he spoke directly to Bazile-Sawyer on more than one occasion while she made rounds. (Doc. 1, p. 9). Plaintiff told Bazile-Sawyer about the violations of his rights as a result of Thompson's actions, but Bazile-Sawyer refused to investigate the matter, stating she supported Thompson's actions. Bazile-Sawyer upheld the disciplinary action after Plaintiff appealed it.

Baldwin, as the "direct supervisor" of Bazile-Sawyer and Thompson, also approved the disciplinary action when Plaintiff's appeal reached him. (Doc. 1, pp 9-10).

Plaintiff seeks compensatory and punitive damages for the violations of his rights and seeks to have his disciplinary convictions reversed and expunged from his record. (Doc. 1, p. 11).

---

[1] Plaintiff's pleading and attachments do not indicate that any of the good-conduct credits he may have already earned were revoked as part of his punishment for the offenses in question. Instead, he speculates that he would have been given the six month credit in the future if he had not incurred the disciplinary violation. Under these circumstances, it does not appear that Plaintiff's claim runs afoul of the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). *See also Edwards v. Balisok*, 520 U.S. 641 (1997) (a prisoner cannot maintain an action for damages based on a disciplinary action where good conduct credits were revoked, unless the prison disciplinary decision has first been invalidated); *DeWalt v. Carter*, 224 F.3d 607, 616-617 (7th Cir. 2000) (Section 1983 claim could proceed where disciplinary sanction did not involve loss of good time).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** First Amendment claim against all Defendants, for punishing Plaintiff for practicing his Asatru religious faith;
>
> **Count 2:** Eighth Amendment claim against all Defendants, for punishing Plaintiff for practicing his Asatru religious faith;
>
> **Count 3:** RLUIPA claim against all Defendants, for punishing Plaintiff for practicing his Asatru religious faith.

As explained below, Counts 1 and 3 shall proceed against some of the Defendants. Count 2 shall be dismissed as duplicative of Count 1 and for failure to state a claim upon which relief may be granted.

**Count 1 – First Amendment**

It is well-established that "a prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990); *see Al-Alamin v. Gramley*, 926 F.2d 680, 686 and nn. 3-5 (7th Cir. 1991) (collecting cases). On the other hand, a prison regulation that impinges on an inmate's First Amendment rights is nevertheless valid "if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Such interests include inmate security and the proper allocation of limited prison resources. *See id.* at 348, 352-53; *Turner*, 482 U.S. at 90; *Al-Alamin*, 926 F.2d at 686.

Restrictions on access to religious services and other opportunities or practices are reviewed in light of four factors outlined in *Turner*: (1) whether there is a valid and rational connection between the regulation prohibiting access and a legitimate governmental interest to justify it; (2) whether there are alternative means of exercising the right to practice religion that remain open to inmates; (3) whether accommodation of the right to practice would have a significant impact on prison staff or other inmates; and (4) whether the regulation is reasonable in terms of allowing prisoners use of available alternatives. *Turner*, 482 U.S. 78; *see also Beard v. Banks*, 548 U.S. 521 (2006).

Here, Thompson brought disciplinary charges against Plaintiff for conducting or facilitating group Asatru worship services, because she viewed this activity as a threat to the safety and security of the institution. Bazile-Sawyer endorsed the disciplinary action and refused to reconsider it after Plaintiff asked her to reverse his punishment. Plaintiff maintains that his religious activity was not a threat and states that IDOC in fact recognizes Asatru as a permitted religion in the prison system. He states that he was open about his beliefs and approached the prison chaplain about holding worship services at Southwestern and bringing in a volunteer to teach adherents, before Thompson initiated her investigation.

Further factual development will be necessary in order to determine whether Thompson and Bazile-Sawyer were justified under the *Turner* factors listed above in curtailing Plaintiff's practice of Asatru and punishing him for his conduct, or whether their actions amounted to a violation of Plaintiff's First Amendment rights. Accordingly, **Count 1** shall proceed against Thompson and Bazile-Sawyer.

The claim against IDOC Director Baldwin in his personal capacity shall be dismissed without prejudice, however. According to Plaintiff's narrative, Baldwin was not personally

involved in bringing the disciplinary charges against Plaintiff, imposing punishment, or in hindering his practice of Asatru. Baldwin merely concurred with the disciplinary action and/or the denial of Plaintiff's grievances filed over the matter, in his supervisory capacity. An administrator cannot be held liable in a civil rights action for the unconstitutional acts of his or her subordinate employees, simply because the administrator held supervisory authority. The doctrine of *respondeat superior* (supervisory liability) is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). For the same reason, an official who reviews a grievance that was filed to complain about the conduct of another prison officer does not thereby incur liability. The Seventh Circuit instructs that the alleged mishandling or denial of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Baldwin shall therefore be dismissed from Count 1.

**Dismissal of Count 2 – Eighth Amendment – Cruel & Unusual Punishment**

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause with regard to any conditions of confinement in prison. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective

conditions must have resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The second requirement is a subjective element—establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842.

In this case, Plaintiff claims that his punishment with segregation and other sanctions for practicing his religion amounted to an Eighth Amendment violation. But however unjust he believes that punishment may have been, nothing in the Complaint indicates that Plaintiff's health or safety was put at risk or that he was denied "the minimal civilized measure of life's necessities" in the way his punishment was imposed. Accordingly, he does not state a claim upon which relief may be granted for cruel or unusual punishment.

Moreover, Plaintiff's purported Eighth Amendment claim is redundant, because it is based on the same set of facts underlying the First Amendment claim in Count 1. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free exercise claim "gains nothing by attracting additional constitutional labels"); *Williams v. Snyder*, 150 F. App'x 549, 552-53 (7th Cir. 2005) (dismissing equal protection, access to courts, due process, and Eighth Amendment claims as duplicative of retaliation and freedom of religion claims).

For these reasons, **Count 2** shall be dismissed from the action without prejudice.

### Count 3 – RLUIPA

Plaintiff's RLUIPA claim overlaps with his First Amendment claim, but it is not subject to dismissal. *See Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) (advising courts to interpret First Amendment free exercise claims filed by *pro se* plaintiffs as including a RLUIPA claim). Notably, the RLUIPA, which is directed at institutions receiving federal financial assistance, provides greater protections than the First Amendment. *See Schlemm v. Wall*, 784 F.3d 362, 363 (7th Cir. 2015); 42 U.S.C.A. § 2000cc-1. "Under the Act, if an inmate shows that an institutional policy substantially burdens his religious exercise, then that policy may not be applied unless the institution shows that the policy is the least restrictive means for advancing a compelling state interest." *Tanksley v. Litscher*, No. 17-2867, 2018 WL 2316923 at *1 (7th Cir. May 22, 2018) (citing 42 U.S.C.A. § 2000cc-1; *Holt v. Hobbs*, 135 S. Ct. 853, 863 (2015)).

Money damages are not available in a RLUIPA suit against state employees in their official capacity, nor does RLUIPA authorize any kind of relief against public employees. *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) (citing *Sossamon v. Texas*, 131 S. Ct. 1651 (2011); *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *Nelson v. Miller*, 570 F.3d 868 (7th Cir. 2009)). For this reason, Plaintiff may not pursue his RLUIPA claim against any of the Defendants in their personal capacities. However, a court may order injunctive relief to correct a violation of the RLUIPA. 42 U.S.C.A. § 2000cc-2.

In this action, Plaintiff has requested injunctive relief to expunge the disciplinary action from his record. Setting aside at this stage the question of whether or not this relief would be available in this civil rights action, the Complaint suggests that other forms of injunctive relief could be appropriate in the event that Plaintiff prevails on his claim. For example, he mentions that certain religious items were confiscated from him, and most basically, he wants to be able to

practice his faith without interference. For this reason, **Count 3** survives review under Section 1915A and shall proceed for further consideration against Baldwin only, in his official capacity.

IDOC Director Baldwin shall therefore remain in the action, in order to carry out any injunctive relief to which Plaintiff may be entitled in connection with **Count 3** or his First Amendment claim. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 3) is referred to United States Magistrate Judge Wilkerson for further consideration.

**Disposition**

**COUNT 2** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

All claims against **BALDWIN** in his individual capacity are **DISMISSED** from this action without prejudice. **BALDWIN** shall remain in the action in his official capacity only, as IDOC Director.

The Clerk of Court shall prepare for **BALDWIN (Official Capacity Only), BAZILE-SAWYER,** and **THOMPSON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent,

the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7**

**days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 15, 2018**

*[signature]*

**NANCY J. ROSENSTENGEL**
**United States District Judge**